Good morning, Your Honors. John Williams on behalf of Appellant General Charles Yeager. I'd like to reserve three minutes of my time for rebuttal if I could. I know my time is short here this morning, so I'll attempt to confine my remarks to putting a finer point on three, I'm sorry, two specific issues. One of the greatest difficulties about this case is that the district court never articulates what ERISA statute of limitations it's applying in this case. It appears to be applying the three-year statute, but then speaks of issues of imputed knowledge in analyzing the record before it. But the three-year limitation period requires actual knowledge. The fact that the district court did not find that General Yeager was credible on when he was making any credibility findings. He just said he took everything, taking everything in the record as in the light most favorable to General Yeager. To the general, you cannot show that this does not add up to a timely filing of the ERISA claim. Your Honor, I'd respectfully disagree. I think it actually what the district court did here is make credibility determination. Well, let me ask you, was this a summary judgment ruling or was it not a summary judgment ruling? It was a summary judgment ruling. All right. Now, what is the primary role of a judge on summary judgment? Not to make credibility rulings. Not to make findings of fact, correct? That's true. You take the evidence in light most favorable. That's the standard that should apply. It's our position that the Court didn't apply the proper standard. So if you take all of General Yeager's story as true, what is the date which he says that he learned of the violation? He says he learned, if you take what he says is true, he said he learned of the violation of the absence of the funding or the violation of ERISA in 2004, at the time of the trial of State court action, when that testimony came out. Okay. And when did the alleged violation, the underfunding, take place? The underfunding had taken place back in the 1990s. But this is important, Your Honor. Okay. So why isn't that, doesn't, you know, why isn't his claim just barred? Well, the Court attached. Four years is more than six years. Yeah. The Court attached significance to 2002. So let's talk about that date. 2002 is the date that General Yeager first gets the documentation from Susan Yeager regarding the pension plan. This is after the pension plan has been terminated. It was terminated in 1997. The funds remained in Susan's possession. And in 2002, General Yeager receives all of the pension plan documentation, which was diverted from his mailbox because Susan had changed the address, so he never had this documentation previously. He gets this documentation in February of 2002. And the district court looked at 2002. Now. Didn't they find that the evidence showed that any diversion of the mail didn't occur until 2001? Wasn't that the evidence in the record? I don't think that was the finding that was made. I think the finding with respect to the diversion of the mail was made by the probate ‑‑ I'm sorry, the referee in the underlying State court action. And that was 2001. The date identified was 2001, wasn't it? I'm not certain of that, Your Honor. All right. But in any event, the court says 2002, he gets this documentation for the first time. He then has his accountants in March of 2002 start to examine this documentation. Now, if you're going to say that he should have known at that time when he got that documentation, then you're talking about a standard that should be used for the six‑year statute. What he should have known, that imputed knowledge standard, only applies with the six‑year statute. So even if we take what the district court found, that 2002 is the significant time he gets this documentation, and at that time he should have known the violation occurred, that's the six‑year statute would be applicable in that case. That would mean that the cause of action could be filed, the claim could be timely filed within six years of 2002, which brings us to 2008. Now, we're saying that under both scenarios, with the six‑year statute, if 2002 is the key date ‑‑ Well, it says no action may be commenced after the blah, blah, blah, blah, after the earlier of. Right. So if it's one, six years, the date of which the action ‑‑ six years after A, the date of the last action which constituted a part of the breach or violation. So when ‑‑ when does that event take place, according to Mr. Yeager, General Yeager? Not that six‑year statute, Your Honor. If you keep looking in the language of the statute, it's in the alternative. That's the six‑year statute. Then there is a three‑year in the alternative. I'm just going down. I'm just ‑‑ because you said that it wasn't clear what the district court did. So I just understand it. Let's just take the district court's ruling for what it is. He found that the statute of limitations under 1113 barred his complaint, his ERISA claim. So there are different scenarios in which there are different time periods that apply. That's correct. One is six years after the date of the last action which constituted a part of the breach or violation. You don't rely on that. We don't rely on that. Okay. So B, in the case of an omission, the latest date on which the fiduciary could have cured the breach. You don't rely on that. That's correct. Okay. So that's out. Two, three years after the ‑‑ let's see. Or three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation. That's right. You rely on that. We rely on that alternative then with the next section, Your Honor. Except that in case of fraud or concealment, such action must be commenced not later  So our argument with respect to the testimony in the record is that General Yeager had actual knowledge in 2004. That would mean he had to 2007 to file. Alternatively, if the court wants to stick with its finding that 2002 is the key date, then we argue there was fraud and concealment with respect to the documentation. That would mean that from 2002, the statute, the six‑year statute would commence and the outside statute would be to 2008. So it's either 2008 or 2007. And under either of those circumstances, this action was filed in June of 2006, and it therefore was timely. So our case law talks about when you're relying on this fraud or concealment, it has to be active fraud or concealment in preventing somebody from learning of the violation. That's right. Okay. So what facts did take in the evidence in light most favorable to General Yeager? What facts did he allege or present that showed that she engaged in active fraud or concealment to prevent him from discovering the violation? The finding of the trial court as affirmed by the court of appeal in the State Court action was that financial documentation relating to the pension plan and other financial documentation had been diverted from General Yeager by virtue of having his address changed. Essentially, Susan had control. I thought all ‑‑ I thought that was ‑‑ that had to deal with the property, the sale of the property. The finding with respect to ‑‑ She wanted to buy the property. Right. The State Court action only dealt with who owned what, essentially. Was it Yeager, Inc.? Was it the trust? Some of these distributions made with respect to the trust and the corporation. Yet the finding of the trial court was also that Susan had diverted this documentation from General Yeager. He was essentially in the dark until 2002 when all of this documentation was turned over to the Bush family. But he had been in the dark by his own choice. Well, again, we have a finding by the State Court with respect to the minutiae, how things worked. That was always the course in dealing with Glenis, his wife. It was the course in dealing with Susan. Big picture items, and again, the State Court found this, he was to be involved in big picture items. That was a specific finding of the State Court as it related to the breach that it found with respect to Susan. I can see my time is up, so I'll reserve my balance for rebuttal. Okay. Good morning, Your Honors. I'm Dewey Hartpainter for Appelese, Susan Yeager and Yeager, Inc. Just in addressing the last point in terms of the State judgment, that State action and the State judgment specifically dealt with, on the mail issue, the creation of a proposed new trust, a qualified residential trust. And that was the ---- What was the purpose of that trust? I'm not ---- Yeah. The two divergent rules, the purpose of the ---- Schooled in all these trusts. The purpose of the trust from our point of view in terms of the change was to protect General Yeager. The purpose from General Yeager's point of view is that that was a further attempt to take over control and take away his assets. So that was what was referred to as a qualified residential trust, and those correspondence were between the attorney, Richard Hawkins, and the CPA, Mr. Robertson, and Ms. Yeager. So by that ---- by the time all that took place, the pension plan had been terminated. Is that correct? Correct, Your Honor. It was terminated by Mr. Yeager. It was ---- the funding stopped in 93. It was terminated in 97. All of those items were signed by General Yeager. There were meetings. There were corporate meetings. There were confirmations of that. And, frankly, that's consistent with the argument that General Yeager was not in the dark, but he maintained, you know, the big picture. What changed ---- He signed off on the termination of the pension plan. Oh, yes. He was a co-trustee. He was president of Yeager Inc., and there were ---- and as well as on the board of directors and all those required documents. Can you explain to me, when they terminated the pension plan, what happened to the assets in the pension plan? Well, the certain assets remained within the structure of the pension plan, and it continued under the name of the pension plan until 2002. General Yeager, by affidavit submitted on December 31st of 2001, removed Susan Yeager as co-trustee, leaving himself as sole trustee. Subsequent to that, in the year 2002, I believe in March of 2002, the properties still remaining in the pension plan were essentially pieces of property, and then he deeded those pieces of property directly to him out of the pension plan. So what is your ---- what do you have to say about counsel's argument here when the statute of limitations begins to run on his arisicling? Well, I believe that it would have to begin to run on the six-year initial statute, because General Yeager was signing off on these different proposals and management of the fund as a co-trustee, as a president, as a board of directors. And while he's also a beneficiary, those actions where he's wearing the management hat, where he has the idea of the big picture, has to give him the knowledge that if there's a claim or what's going on, that there's a consent there. The other issue comes down to, let's assume that he's just from a beneficiary point of view, and we move down to the three years as the earliest knowledge. He has removed Susan Yeager on document and by affidavit on December 31st of 2001 as co-trustee of the pension plan and as co-trustee or trustee or power of attorney under any circumstances at that point in time. So the conflict within the family that emerged from 2000 by the 2001 had come to fruition. 2001 was also the date of the transfer of the real property or the purchase of the real property by the Charles Yeager Trust. And that was consummated in January of 2002 when that actual transfer took place. So we also have within the context of the state court action and General Yeager submitting answers to interrogatories, and this is, I believe, our undisputed fact number 94, which says that in those interrogatories he's identifying specific claims in regards to mismanagement of the pension plan. We submit that as an undisputed fact. General Yeager comes back and says this is disputed because I didn't know all claims. So there's a parsing going on here in terms of what's being presented, but in terms of the clear documentation, we have General Yeager's signatures throughout this well prior to 2001 and directly identified within the context of the management and what is occurring and the stopping of the funding of the pension plan. And that's in 93 and that's in 97. What about the argument that the six-year statute applies for fraud and concealment? Well, that, first of all, that would have to present evidence of fraud and concealment. One of the issues we presented on summary judgment was that there was a lack of any evidence. The only evidence that they've been able to present is kind of bootstrapped to this issue of the trust and the sale or the creation of this qualified residential trust on the real property in 2001 between the CPA, between the estate planning attorney, Ms. Yeager. And that was completely separate. The diversion, the claim diversion of mail was mail between the various professionals with Susan Yeager and that's dealt specifically with those items. It had nothing to do with the financial record. They've been able to present no financial information that would have been mailed or had been mailed or was presented on this pension plan. Who was doing the tax planning on this pension fund? Well, the tax planning was being performed by the CPA, Scott Robertson, with Susan Yeager, primarily providing the information and bringing that forth. And the tax matters in relation to the trust. The pension plan had one fund, and then there was a trust fund. Now, however, was there any transfer from the pension plan to the other, to the trust? There were initially on Mrs. Glynis Yeager's death, as well as subsequent to that prior to the actual termination. There were monies transferred. Those went into the family trust of General Yeager. Were there any tax consequences when those transfers were made? I, at the time, I don't believe so, being a pension plan. I don't have the answer to that, frankly, Your Honor, as to whether those particular items were. What remained, however, was real property, not an account within the title of the pension plan. There's one last issue we didn't address, which is you advanced an argument in the blue brief that the appeal here is untimely. I did, Your Honor, and I advanced that on my last review of the record from Judge Mendez's comments on the denial of my motion for summary judgment, based on timeliness under Judge Mendez's ruling. And his comments seem to infer that the June 3rd, despite the correction or correctory judgment of February, was the date that he was running as the final date for the purpose of the motion for the request for attorney's fees. And quite frankly, I had resisted that correction, but when the Court granted the motion and instituted the February judgment, I assumed that that would be the final judgment and that was the basis for my then bringing a motion for attorney's fees within 30 days of that. That was rejected based on timeliness. And in looking at Judge Mendez's comments, finally, it seemed that he was looking at that last correctory judgment as simply ministerial and not the final judgment. My view is that if that is the case, that's jurisdictional and not necessarily waived, and that was the purpose of my presenting it in the brief at that time. So it was all this business about the later judgment that gets entered in response to the 54B request? Yes. That's what you're talking about? Yes, Your Honor. I see. The vagaries of that are beyond me, frankly. Okay. Okay. At this point, I would rest and submit it to Your Honors. Thank you. Briefly, Your Honor. The question was raised with respect to some tax planning, and that issue goes directly to this diversion of documentation. Scott Robertson was the CPA who had handled all of the tax planning while Susan was in control, and that would have included anything that had to do with the pension. It was Mr. Robertson's address that the mail was diverted to. So, again, we think there's a tribal issue with respect to what General Yeager knew and when he knew it. There is this coalescing around the 2002 period because that's the time that the documents were turned over. But given the conduct that the underlying trial court found with respect to Susan's activities, hiding these financial documents from General Yeager, we believe that the six-year statute should apply with the fraud and concealment. And if you're imputing knowledge to General Yeager, then that would be triggered at the 2002 period. Alternatively, within that period of time, if he says, I have actual knowledge, I actually find out in 2004, the latest he could file his claim to be timely would be 2007. Unless there are any further questions, we will submit. Thank you. Thank you, Counsel, the matter is submitted. I appreciate your arguments.
judges: O'grady, Goodwin, Paez